**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARILYN MALARKEY,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 09-3278** |
| | : | |
| **THE READING HOSPITAL AND** | : | |
| **MEDICAL CENTER,** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

STENGEL, J.                                                                November  18 , 2010

Plaintiff Marilyn Malarkey has filed suit against The Reading Hospital and

Medical Center alleging violations of the Age Discrimination in Employment Act and the

Pennsylvania Human Relations Act.  She was employed by a nursing agency, G.W.R.

Personnel Resources, and in that capacity, was assigned for approximately ten years to the

Emergency Department at the Reading Hospital and Medical Center.  When TRHMC

requested that she no longer be assigned to work in the Emergency Department, Ms.

Malarkey refused to accept agency work in other departments of TRHMC or in other

hospitals.  For the reasons set forth below, I will grant the defendant's motion for

summary judgment.

## I.      BACKGROUND

Marilyn Malarkey is a registered nurse who began working for G.W.R. Personnel

Resources in 1998.  Def.'s Statement of Undisputed Material Facts ("Def.'s SUF") ¶ 1;

Pl.'s Statement of Undisputed Material Facts ("Pl.'s SUF") ¶ 10.  The year she began

working for G.W.R., she was "contracted out" to the Emergency Department of TRHMC.

Def.'s SUF ¶ 7; Pl.'s SUF ¶ 11. As a contract, or agency nurse, Ms. Malarkey determined how many and what shifts she wanted to work. Def.'s SUF ¶ 8. Ms. Malarkey worked in the Emergency Department at TRHMC, as an agency nurse employed with G.W.R., from 1998 until October of 2007. Pl.'s SUF ¶ 12. It was in 2007 that Darlene Mercieca, the Director of the Emergency Department at TRHMC, decided that certain G.W.R. agency nurses who had been regularly assigned to the Emergency Department had the potential to lure staff nurses employed directly by TRHMC away from the hospital and to G.W.R. Def.'s SUF ¶¶ 17–18; Affidavit of Michelle Trupp, ¶ 2. This concern was largely based on the fact that staff nurses employed by TRHMC earned approximately $33.53 per hour, while G.W.R. agency nurses earned approximately $89.00 per hour. Def.'s SUF ¶ 18; Trupp Affidavit, ¶ 3. Ms. Mercieca decided that she would no longer allow two G.W.R. nurses — Ms. Malarkey and Donna Wertz — to work as agency nurses in the Emergency Department. Trupp Affidavit, ¶ 4. Ms. Mercieca chose these two nurses because of all the G.W.R. nurses that worked in the Emergency Department, they had been there the longest. Id. At the time TRHMC made the decision that Ms. Malarkey and Ms. Wertz would no longer be accepted for shifts there, Ms. Malarkey was sixty-seven years old and Ms. Wertz was forty-nine. Pl.'s SUF ¶¶ 28, 29.

Throughout her tenure at TRHMC, Ms. Malarkey received positive evaluations from G.W.R. and praise from her co-workers and patients. Pl.'s SUF ¶ 13. Ms. Mercieca spoke with Ms. Malarkey on August 15, 2007, to explain why the Emergency Department

would no longer accept her as an agency nurse.  Pl.'s SUF ¶ 14.  Ms. Malarkey described

the conversation she had with Ms. Mercieca when she arrived in Ms. Mercieca's office:

> And she said, you've been an agency worker too long, would
> you like to come on staff full time.  And I said no.  She said why not.
> I said I haven't worked full time in years and that is by choice, and I
> would certainly not want to start working full time now.
> . . .
>
> But she said - - she started talking to me about the cost to the
> hospital and injected that GWR was making a lot of money besides my
> wages; and because I was [a] temporary nurse with longevity, I would
> be the one to go first.
> And I asked how patient care could be affected negatively with
> me assigned versus anyone else working less - - less years and not
> positively since I was familiar to the facility, the staff, and never had a
> problem there.  She said none of that fitted into the equation.  It was a
> matter of getting rid of agency.  She said I have too many friends there.
> I was never offered a contract, full time or part time or any - - on
> anything.

Malarkey Dep. 127:25–128:21.  Ms. Malarkey presented an email she claims was

authored by Ms. Mercieca, which states that "[Ms. Malarkey and Ms. Wertz] have been

here 10 and 9 years respectively.  They have both been offered full time staff positions

here and have declined at this point. . . . We value our agency staff to help us but upper

level administration has looked down on agency staff who are here too long.  The cost of

these nurses to the hospital is high and we need to balance our needs with cost."  Def.'s

Ex. H.  Ms. Malarkey did not accept the full time position she was offered at the

Emergency Department, both because she did not want to work full time and because

accepting it would require a reduction in pay.  Pl.'s SUF ¶ 16.  Neither she nor Ms. Wertz

were permitted to be assigned to the Emergency Department at TRHMC after October of 2007.

However, Ms. Malarkey was offered other positions by the President of G.W.R., Gary Rogers, including a position at York Memorial Hospital and a full-time position in TRHMC's clinic. Malarkey Dep., 135:12–22; 140:13–15. She explained that she rejected the position in the clinic because it was full time, because she did not have office experience, and because she "had already applied to the Wilson School District" and "was just waiting for all my clearances." Id. at 140:20–25. Records kept in the ordinary course of business by G.W.R. include a log detailing communications with Ms. Malarkey about her G.W.R. staffing assignments. The log confirms the substance of the conversation between Ms. Malarkey and Ms. Mercieca, as reported by Ms. Malarkey. See Def.'s Ex. A at G.W.R. Log p. 4, 8/15/07 entry ("[Ms. Malarkey] said that Darlene told her that they are getting rid of agency and that Marilyn would be the first to go since she has been there the longest."). The log also provides myriad examples of the efforts G.W.R. made to find Ms. Malarkey replacement work, either at TRHMC or at another hospital. For example, the log indicates that, after the Emergency Department stopped accepting Ms. Malarkey as an agency nurse, Mr. Rogers offered Ms. Malarkey work in the "Med Surg" department at TRHMC at the same rate of pay she had received in the Emergency Department. Id. at Log p. 3, 10/22/07 entry. Ms. Malarkey "said that she did not want to go back to TRHMC med/surg." Id. Another G.W.R. employee asked Ms. Malarkey if

she wanted full time work at TRHMC dispensary.  <u>Id.</u> Log p. 3, 10/23/07 entry.  When

she refused because it was full time, the employee "asked if she would be interested in 2

or 3 days per [week]" and Ms. Malarkey responded that "it's something to put in my cap -

but don't stop looking for someone else."  <u>Id.</u>  Next, G.W.R. offered Ms. Malarkey work

in the Rehabilitation Department at TRHMC, which Ms. Malarkey rejected because it

was "a lot of lifting, solo lifting, so no, [she was] not interested."  <u>Id.</u> Log p. 3, 10/25/07

entry.  Mr. Rogers also offered to pay for overnight lodging if Ms. Malarkey wanted to

work at York Hospital.  <u>Id.</u> at Log p. 3, 11/1/07 entry.  Ms. Malarkey "said she

appreciated it but that she had applied for a job as school nurse with the Wilson School

District."  <u>Id.</u>  The same day, Mr. Rogers wrote the following:

> [Ms. Malarkey] then asked if we were going to keep her busy.  I told
> her that depended on how flexible she was going to be in accepting
> work.  I reminded Marilyn that we still have a lot of work for her.  I
> told Marilyn that we had work at [St. Joseph's Medical Center] Labor
> and Delivery.  She said she would not accept work there, and she also
> said she knows we have work in TRHMC Rehab, I confirmed that to be
> true, she said that she does not want to accept work there, she also said
> that she does not want to be assigned to TRHMC M/S (med/surg), she
> said she did not want to accept the THRMC clinic assignment, and she
> said she also knows we have work at York but does not want to accept
> that work either.

<u>Id.</u> at Log p. 2, 11/01/07 entry.

Ms. Malarkey's statements during her deposition do not entirely confirm the

substance of Mr. Rogers' conversations with her, as recorded in the log.  For example,

Ms. Malarkey stated that she did not recall being offered work in TRHMC's Med/Surg

department or that G.W.R. offered her two to three days a week of work in TRHMC's

dispensary.  Malarkey Dep. 151:22–152:5; 160:10–20.  However, she did not dispute the

truth of the log, and confirmed that she would have refused the assignments offered:

> Q: Had you concluded at this point in time, as of October 4[th],
> 2007, that you had no intention of returning to the Reading
> Hospital & Medical Center because they were telling you that
> you couldn't work in the [Emergency Department]?
> A. My feeling would have been that.  I hadn't made up my mind
> or verbalized that to anybody, but it was – I was just
> heartbroken.
> ...
> Q: But at this point in time you didn't want to go anywhere else
> but the [Emergency Department], the assignment you had
> before, right?
> A: As far as the Reading Hospital, yes.

Malarkey Dep.152:9–16; 153:14–17.  At one point during her deposition, in response to

questions concerning her rejection of other positions at TRHMC, Ms. Malarkey stated

simply and revealingly: "I would have preferred to have stayed in the [Emergency

Department] like everybody else."  Id. at 164:10–11.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" when a reasonable jury

could return a verdict for the non-moving party based on the evidence in the record.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is

"material" when it could affect the outcome of the case under the governing law.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing "based on the affidavits or by depositions and admissions on file" that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

## III.  DISCUSSION

In Count I of her complaint, Ms. Malarkey claims that TRHMC unlawfully "used Plaintiff's age as a motivating factor in terminating Plaintiff" and "unlawfully and impermissibly used Plaintiff's age as a basis for making an adverse decision and/or taking adverse action against Plaintiff in terminating her position of employment."  Compl. ¶¶

20–21.

The central provision of the ADEA provides that it shall be unlawful for an

employer[1]:

> (1)     to fail or refuse to hire or to discharge any individual or
>         otherwise discriminate against any individual with respect to his
>         compensation, terms, conditions, or privileges of employment,
>         because of such individual's age;
>
> (2)     to limit, segregate, or classify his employees in any way which
>         would deprive or tend to deprive any individual of employment
>         opportunities or otherwise adversely affect his status as an
>         employee, because of such individual's age; or
>
> (3)     to reduce the wage rate of any employee in order to comply with
>         this Act.

29 U.S.C. § 623(a).

To establish a disparate treatment claim under the ADEA, a plaintiff must prove

that age was the "but-for" cause of the defendant's adverse decision.  Gross v. FBL

Financial Services, Inc., - - U.S. - -, 129 S.Ct. 2343, 2350 (2009) (a plaintiff must prove

---

[1] There is an issue unmentioned in the parties' briefs I will briefly address: whether Ms. Malarkey has standing to sue TRHMC at all, since she was not an employee there, but was instead an employee of G.W.R.  This appears clear from the evidence of record, which establishes that Ms. Malarkey received her wages from G.W.R. and received all her work assignments through G.W.R.  In order to assert claims under the ADEA, Title VII, or the ADA, a plaintiff must bring those claims against her employer.  To satisfy this requirement, the defendant need not be the plaintiff's actual or direct employer: "[W]here [a] defendant, though not the plaintiff's employer, nevertheless  has such a degree and range of control over the plaintiff that it is the plaintiff's de facto or indirect employer . . . the relationship of the parties should be regarded as an employment relationship."  Conroy v. City of Philadelphia, 421 F. Supp. 2d 879, 888-89 (E.D.Pa. 2006) (citing Tyrrell  v. City  of  Scranton,  134  F.Supp.2d 373, 380 (M.D.Pa.2001)).  I will assume that TRHMC did not raise this issue because it recognizes that its degree of control over Ms. Malarkey's assignments within the hospital was substantial.

-8-

by a preponderance of the evidence, which may be direct or circumstantial, that age was the "but-for" cause of the challenged employer decision).  The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.  Id. at 2352.  Shifting the burden of persuasion to the defendant is improper because the plain language of the ADEA requires the plaintiff to prove that the defendant took the adverse employment action "because of [the plaintiff's] age."  Id. at 2350-51 (quoting 29 U.S.C. § 623(a)(1)).  The Supreme Court construed this language in the statute as requiring that the plaintiff prove but-for causation from the outset of an ADEA case.  Id.

The Third Circuit has since recognized that Gross expressed significant doubt about any burden-shifting under the ADEA, but it concluded that the "but-for causation standard" required by Gross did not conflict with the continued application of the McDonnell Douglas[2] paradigm in age discrimination cases:

> Gross stands for the proposition that it is improper to shift the burden of persuasion to the defendant in an age discrimination case. McDonnell Douglas, however, imposes no shift in that particular burden.  McDonnell Douglas provides that, once the employee establishes a *prima facie* case, the burden of production (i.e., of going forward) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual.  Throughout

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).

this burden-shifting exercise, the burden of persuasion, "including the burden of proving 'but for' causation or causation in fact, remains on the employee." Hence, <u>Gross</u>, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying <u>McDonnell Douglas</u> to age discrimination claims.

<u>Smith v. City of Allentown, et al.</u>, 589 F.3d 684, 691 (3d Cir. 2009) (internal citations omitted).

A. **The Plaintiff Has Not Established a *Prima Facie* Case of Age Discrimination**

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate that she (1) was over the age of 40; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. <u>Barbee v. SEPTA, et al.</u>, 323 Fed. Appx. 159, 161 (2009) (quoting <u>Monaco v. Am. Gen. Assur. Co.</u>, 359 F.3d 296, 300-301 (3d Cir. 2004)); <u>see also</u> <u>Fasold v. Justice</u>, 409 F.3d 178, 185-186 (3d Cir. 2005); <u>Potence v. Hazleton Area Sch. Dist.</u>, 357 F.3d 366, 370 (3d Cir. 2004).

It is important to note, however, that there is no hard-and-fast rule for what a plaintiff must present in order to make a *prima facie* showing. Rather, "the precise elements of a plaintiff's *prima facie* case may vary with the particular circumstances." <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494 n.3 (3d Cir. 1995); <u>see also</u> <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 411 (3d Cir. 1999) ("[A] prima facie case cannot be established on a one-size-fits-all basis.").

It is clear that Ms. Malarkey has established the first two elements of the *prima*

*facie* case.  She was sixty-seven years old during the relevant period, and there is no

evidence in the record that she was unqualified to work as a registered nurse or that her

performance was in any way problematic.

It is on the third element of the *prima facie* case that TRHMC argues Ms.

Malarkey's claim must fail.  To have satisfied that element, the alleged adverse

employment action must be sufficiently severe such that the compensation, terms,

conditions, or privileges of Ms. Malarkey's employment were altered, or she was

deprived of employment opportunities or her status as an employee was otherwise

adversely affected.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1296-1297 (3d Cir.

1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. 53, 126 S.Ct. 2405 (2006); see also 29 U.S.C. § 623(a); Cardenas v. Massey, 269

F.3d 251, 263 (3d Cir. 2001)) (an "adverse employment action" is "an action by an

employer that is serious and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment").

Although the type of adverse employment action that satisfies this standard is often

one that results in economic injury, it can also include, among others, "reassignment with

significantly different responsibilities," "failure to promote," "a less distinguished title,"

"a material loss of benefits," and "significantly diminished material responsibilities."  See

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998) (an

employment action is not materially adverse if it merely bruises the ego, results in a

demotion without change of pay, benefits, duties, or prestige, or leads to a merely inconvenient reassignment). When a plaintiff alleges that a lateral transfer constituted a materially adverse employment action, that plaintiff does not show actionable injury "unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of [] employment . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncracies of personal preference are not sufficient to state an injury." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) (cited in Fallon v. Meissner, 66 Fed. Appx. 348, 351 (3d Cir. 2003)). In other words, for a lateral transfer to amount to an adverse employment action, the plaintiff's refusal to accept the transfer "must not arise from the employee's individual preferences." Fallon, 66 Fed. Appx. at 352. The Third Circuit has recognized that an adverse employment action has been sufficiently alleged where an employee was transferred to new position that paid the same as a previous position but was a "dead-end job," see Torre v. Casio, Inc., 42 F.3d 825, 831 n. 7 (3d Cir. 1994), and where a plaintiff alleged that a new position was less desirable and because, although it was "temporary," it lasted over a year, see Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 115-16 (3d Cir. 1996). However, where a plaintiff simply alleges a transfer to a position offering the same pay and benefits but which she does not prefer, she has not met her burden of showing an adverse employment action. See, e.g., Washco v. Fed. Express Corp., 402 F. Supp. 2d 547, 558-59 (E.D.Pa. 2005) (ruling against plaintiff who

failed to allege that she was docked in rank, pay, or benefits, or that she perceived the new position to be a demotion); Mallet v. Potter, No. 05-5586, 2008 WL 724348 at *4 (D.N.J. Mar. 17, 2008) (finding no adverse employment action because "[p]laintiff's subjective preferences cannot be used to show that he suffered an adverse employment action" and because plaintiff's arguments that his old position "was located closer to his home and entailed less physical demands are not persuasive.").

TRHMC argues that Ms. Malarkey has failed to establish that she suffered an adverse employment action and that she has therefore failed to meet her *prima facie* burden. I agree. In an attempt to draw this court's attention away from the basic facts presented here, Ms. Malarkey stresses that many of the other positions offered to her at TRHMC were not part-time and were in units in which Ms. Malarkey was unfamiliar with the work. Both arguments are belied by the evidence in the record. The G.W.R. log shows that Ms. Malarkey was offered and/or discussed potential positions in the Med/Surg, Rehabilitation, Clinical, and Dispensary units at TRHMC. When rejecting those positions, she never mentioned her unfamiliarity with the work; rather, she gave no reason at all or suggested that the physical requirements were too demanding. In her deposition, Ms. Malarkey again did not bring up a lack of training as a reason for rejecting other jobs with TRHMC. Instead, she admitted that she simply did not *want* to work in any other department at TRHMC. Finally, Ms. Malarkey argues, in her response to TRHMC's motion, that "as the undisputed record reflects, Plaintiff has stated that

working in emergency care is an extremely prestigious position for a Registered Nurse."
Pl.'s Resp. 9 (citing Malarkey Dep., 17). However, nowhere on the deposition page she
cites does Ms. Malarkey mention that an emergency care position is prestigious, or that it
is more prestigious than other positions she was offered at TRHMC.

In a further effort to salvage her case, Ms. Malarkey offered an affidavit with her
sur-reply to TRHMC's motion. In this affidavit, she explains that she could not accept a
position in TRHMC's Rehabilitation Unit because "it was very different from [her]
position in the [Emergency Department] and was not an area of nursing for which [she]
had specific training." Malarkey Affidavit. She also gives reasons relating to travel and
experience for her rejection of positions outside TRHMC. Id. Finally, she states that she
does not recall being offered any other positions by either G.W.R. or TRHMC following
her termination from the Emergency Department. Id.

Ms. Malarkey's attempt to explain away each instance where she rejected a
position either with TRHMC or at another hospital distorts the real nature of the facts in
this case. Even viewing all the evidence in the light most favorable to Ms. Malarkey, it is
impossible to avoid the conclusion that Ms. Malarkey's refusal to accept other positions
with TRHMC was purely a matter of her personal preference. This is not a case where
the plaintiff was unilaterally transferred to another, less desirable or dead-end position.
Rather, Ms. Malarkey was terminated from one position at TRHMC and was then offered
myriad other positions, both full and part time, in other units of the hospital, including the

Med/Surg unit, the Rehabilitation Unit, the Clinic, and the Dispensary. In a truly ironic twist, Ms. Malarkey was even offered, by TRHMC, a full-time staff position in the Emergency Department. In other words, Ms. Malarkey is now suing the entity that was *not* her employer for *offering* her a job. I recognize that a position as a staff nurse offered a lower rate of pay than her position as an agency nurse, and that Ms. Malarkey was not interested in working full time, but to ignore this fact would be perverse. Essentially, Ms. Malarkey asks this court to find that she suffered an adverse employment action when she refused every job offered to her that was not on the exact terms she desired. TRHMC essentially bent over backwards to offer, through G.W.R., other positions for her. When asked whether she would have refused any job at TRHMC that was not in the Emergency Department, Ms. Malarkey responded "[m]y feeling would have been that. I hadn't made up my mind or verbalized that to anybody, but it was – I was just heartbroken." When asked to confirm that she "didn't want to go anywhere else but the Emergency Department," Ms. Malarkey responded, "[a]s far as [TRHMC], yes."

The law is clear that a plaintiff has not suffered an adverse employment action solely because her personal preferences for a particular job go unfulfilled. Ms. Malarkey did not testify, in any portion of her deposition to which she points us, that any of the other jobs offered to her at TRHMC were less prestigious or that she perceived a move to another unit as a demotion. Her concerns about the different physical requirements of work in the Rehabilitation Unit are not sufficient to support her assertion that she suffered

-15-

an adverse employment action. To find that Ms. Malarkey has met her *prima facie* burden where the evidence, viewed practically and in the light most favorable to her, so clearly indicates that she wanted to work in the Emergency Department and simply refused to accept work in multiple other units, would defy the purpose of the ADEA, which is to "promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621.

Because I believe Ms. Malarkey's *prima facie* case fails on this ground, I will not address in detail whether she has met the fourth element of her *prima facie* burden and has proved that she was replaced by an individual under the age of 40. I will simply note that Ms. Malarkey would likely fail to meet her *prima facie* burden on this ground as well. She has presented no evidence contradicting TRHMC's contention that she and Ms. Wertz, the first agency nurses made to leave the Emergency Department, were in fact the nurses who had been there the longest by a number of years. In other words, no agency nurse exists who had been staffed in the Emergency Department longer than either Ms. Malarkey or Ms. Wertz and was allowed to stay. Therefore, no individual younger than Ms. Malarkey with the same amount of years in the Emergency Department as an agency nurse, was offered her job.

**B.      The Plaintiff Has Failed to Show That Her Age Was the But-For Reason For Her Termination**

In the alternative, I will briefly address whether, had Ms. Malarkey stated a prima facie case of employment discrimination, she could show that the reason given by

TRHMC for her termination from assignments in the Emergency Department was pretext for age discrimination. TRHMC claims it refused to allow Ms. Malarkey to continue working in the Emergency Department because her years-long presence there as an agency nurse making nearly three times more than staff nurses might serve to lure Emergency Department staff nurses to G.W.R. This reason is legitimate and non-discriminatory. It reflects TRHMC's concern that nurses it paid less, as members of its permanent staff, would quit in an effort to do the same work, but while getting paid the much higher agency rate. The reason Ms. Malarkey and Ms. Wertz were the first agency nurses excluded was their status as the longest-serving Emergency Department agency nurses.

Ms. Malarkey claims that two separate pieces of evidence serve to establish that there is a question of fact whether age was the but-for reason for her termination, or that this nondiscriminatory reason offered by TRHMC was pretextual. First, she claims Ms. Merceica's statement that she was being refused assignments in the Emergency Department due to her longevity and popularity with the staff indicated discriminatory intent. She also points to the affidavit from Gary Rogers in which he states, "I believe that Marilyn Malarkey was targeted for termination of her contractual placement as a result of her age, longevity, and the amount of respect she received from other staff and co-employees." Rogers Affidavit, Pl.'s Ex. B. He also states that, "it is my understanding that the overall cost of a G.W.R. employee is comparable to the cost of a

direct employee . . . even though the rate of pay to the individual nurse is less." Id.

These arguments are without merit. Ms. Merceica's statements to Ms. Malarkey, as explained by Ms. Malarkey in her deposition, make no reference to age, indicating instead that her years working in the Emergency Department, and not her age, were the reason for her termination. The Supreme Court has recognized that lower courts must often determine whether an employer has violated the ADEA when it acts on the basis of a factor "such as an employee's pension status or seniority, that is empirically correlated with age." Hazen Paper Co. v. Biggins, 507 U.S. 604, 608, 113 S.Ct. 1701 (1993). However, it has recognized that reliance on a trait correlated with age does not give rise to liability under the ADEA; rather, an employer violates the ADEA where "the protected trait actually motivated the employer's decision." Id. at 609. It explained further that the very essence of the discrimination Congress intended to prohibit is discrimination where "an older employee [is] fired because the employer believes that productivity and competence decline with old age." Id.

Ms. Malarkey has presented no evidence indicating that age was the motivating factor for her termination, or that the reason TRHMC has provided is pretextual. Even accepting as true her description of her conversation with Ms. Merceica, it is clear that she was prohibited from taking on further shifts in the Emergency Department not because of her age, but because she had been an agency nurse there for the longest time. More importantly, Ms. Malarkey does not dispute that TRHMC offered her a full time

position as a staff nurse.  This fact in itself makes clear that TRHMC did not terminate

Ms. Malarkey's contract position because of any belief that her productivity or

competence had declined; rather, it offered her a permanent position there as an

alternative to employing her as a contract nurse, which was more expensive.  An

employer acting on the basis of ageist stereotypes by assuming an older employee suffers

from declining competence would simply not offer a permanent position to that

employee.

Neither does Mr. Rogers' statement support Ms. Malarkey's claim.  That he

believes TRHMC discriminated against Ms. Malarkey is simply irrelevant.  "Conclusory

assertions of discriminatory intent contained  in an affidavit submitted by a plaintiff

cannot defeat a properly supported motion for summary judgment filed by the defendant."

Venter v. Potter, 694 F. Supp. 2d 412, 433 (W.D.Pa. 2010).  As to his statements

concerning the cost to TRHMC of contract nurses relative to staff nurses, he sets forth no

basis for this belief, and because he does not work for TRHMC or have any basis for

professing knowledge of its cost considerations, I will not credit his assertion.

In sum, even assuming that Ms. Malarkey had stated certain elements of a *prima

facie* case of employment discrimination in violation of the ADEA, she has failed to show

that age discrimination was the but-for cause for her termination of assignments in the

Emergency Department.  TRHMC has offered a legitimate, non-discriminatory reason for

its decision, and Ms. Malarkey has offered no evidence calling it into question.

## C.     The Plaintiff Has Not Stated a Viable Claim Under the PHRA

In her sur-reply to TRHMC's motion for summary judgment, Ms. Malarkey raises

for the first time the argument that, even if she cannot show, as she is required to under

the ADEA, that age was the but for cause of her termination, she can still maintain a

claim under the PHRA because the PHRA does not employ the "but for" test.  Judge

Pollack has confronted this argument in the context of a mixed-motives retaliation claim

asserted under both the Americans With Disabilities Act and the PHRA.  He noted that

"[a]s a general, though not sacrosanct rule . . . the PHRA is interpreted in accordance with

the parallel federal anti-discrimination law."  Warshaw v. Concentra Health Serv., - - F.

Supp. 2d - - , 2010 WL 2470881at *15 (E.D.Pa. June 14, 2010).  Because the anti-

retaliation provisions of the ADA and the PHRA are "substantially similar," Judge

Pollack found that there was no reason to depart from the accepted norm of construing the

two statutes co-extensively.  Id.  Here, Ms. Malarkey attempts to distinguish the ADEA

from the PHRA on the ground that the PHRA "covers more than one type of

discrimination."  Pl.'s Sur-Reply, 4.  She ignores the real underlying issue — whether

there is any significant difference in the language of the PHRA and the ADEA with

respect to the disparate treatment discrimination she alleges occurred here.  There is no

difference between the relevant language of the two statutes,[3] and, as the Third Circuit

---

[3]  The ADEA imposes liability where an employer "fail[s] or refuse[s] to hire or []
discharge[s] any individual or otherwise discriminate[s] against any individual with respect to his
compensation, terms, conditions, or privileges of employment, because of such individual's
age[.]"  29 U.S.C. § 623(a).  The PHRA provides that it is unlawful "for any employer because of

has instructed: "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." <u>Fogelman v. Mercy Hosp., Inc.</u>, 283 F.3d 561, 567 (3d Cir. 2002). Therefore, Ms. Malarkey's PHRA claim is no more viable than her ADEA claim.

## IV.    CONCLUSION

Ms. Malarkey has failed to show that she suffered an adverse employment action when TRHMC stopped accepting her as a contract nurse in its Emergency Department and she has therefore failed to state a *prima facie* case of age discrimination.  In the alternative, she has failed to show that a material issue of fact exists whether the reason TRHMC gave for its decision was pretext for employment discrimination.  Therefore, I will grant TRHMC's motion for summary judgment and enter judgment in favor of TRHMC.

---

the . . . age . . .  of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."  43 P.S. § 955(a).